# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00982-SCT

*ASHLEY RENEE REAVES, A MINOR, BY AND THROUGH HER NEXT FRIEND AND NATURAL MOTHER, REBECCA LOU ROUSE*

*v.*

*W. P. RANDALL AND GREENWOOD MUNICIPAL SEPARATE SCHOOL DISTRICT*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/17/97 |
| TRIAL JUDGE: | HON. SHIRLEY C. BYERS |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRESTON D. RIDEOUT, JR. |
| ATTORNEY FOR APPELLEES: | RICHARD A. OAKES |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 12/31/1998 |
| MOTION FOR REHEARING FILED: | 1/14/99 |
| MANDATE ISSUED: | 4/15/99 |

### BEFORE SULLIVAN, P.J., MILLS AND WALLER, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. The present case was considered by this Court in *Ashley Renee Reaves v. W.P. Randall and Greenwood Municipal Separate School District*, No. 97-CA-00982 (decided December 31, 1998). After full consideration, we deny the School District's Motion for Rehearing and issue the following modified opinion.

## STATEMENT OF THE CASE

¶2. Summary judgment was granted by the Circuit Court of Leflore County in favor of W.P. Randle and the Greenwood Municipal School District on July 21, 1997. This grant dismissed the complaint filed by Ashley Renee Reaves, by and through her mother, Rebecca Lou Rouse, on July 3, 1996. This tort claim is one governed by the Mississippi Tort Claims Act and was dismissed for failure to comply with the notice of claim requirements of the Act. The chancellor found that since the notice requirement of the Act was not met, there was no waiver of immunity by the school district and therefore no jurisdiction for the court. Absent the tolling of the one-year statute of limitations of the Mississippi Tort Claims Act by adequate notice, this claim is procedurally barred.

## STATEMENT OF THE FACTS

¶3. The facts pertinent to the issues of notice and waiver of notice are undisputed. Ashley Renee Reaves was riding her bike toward Davis Elementary with her friend Brandon Lancaster on February 18, 1996, around 1:30 p.m. At the same time the two were approaching the school, W. P. Randle was driving a pickup truck owned by the Greenwood Public School District in the opposite direction. Lancaster apparently spotted Randle and stopped. Reaves's bike bumped into the back of Lancaster's stopped bike. Reaves then veered left and struck the truck driven by Randle.

¶4. On February 27, 1996, counsel for the appellant sent a letter to Dr. C.L. Stevenson, Superintendent of the Greenwood Municipal Separate School System, which read:

> I have been retained by Rebecca Lou Rouse to represent her daughter, Ashley Renee Reaves, with regard to injuries and damages arising and growing out of a bicycle/motor vehicle accident which occurred on 2/18/96 at approximately 1:30 p.m. on the grounds of Davis School. It would be greatly appreciated if you would have your insurance carrier contact me regarding adjustment of this claim. /s/ Preston Davis Rideout, Jr.

On April 15, 1996, the appellant received a letter from the claims adjuster, Stuart Chisolm, for Gallagher Bassett Services, Inc., on behalf of the Greenwood Municipal Separate School District. The adjuster requested an interview with the appellant. An interview was conducted on May 15, 1996, in which Chisolm had the opportunity to interview Reaves and Rouse. Through counsel on September 27, 1996, Reaves also answered interrogatories propounded by the school district. In preparation for trial, the depositions of several witnesses were taken including Reaves, Rouse, and Lancaster. Aggrieved by the Circuit Court's grant of summary judgment, Reaves assigns as error the following issues:

**I. WHETHER ANY DEFECTS IN THE STATUTORY NOTICE LETTER REQUIRED BY § 11-46-11 MISS. CODE ANN. WERE WAIVED BY THE SCHOOL DISTRICT'S INSURANCE ADJUSTER WHEN HE INVESTIGATED AND REJECTED REAVES'S CLAIM.**

**II. WHETHER ANY DEFECTS IN THE STATUTORY NOTICE LETTER REQUIRED BY § 11-46-11 MISS. CODE ANN. WERE WAIVED BY THE SCHOOL DISTRICT'S PARTICIPATION IN DISCOVERY OR OTHERWISE CURED BY INFORMATION PROVIDED IN DISCOVERY.**

## STANDARD OF REVIEW

¶5. The summary judgment motion is the only pretrial motion which allows the Court to "go behind the pleadings" and consider evidence such as admissions, answers to interrogatories, depositions, and affidavits. If this examination indicates there is no genuine issue of material fact, the moving party is entitled to a judgment as a matter of law. *Newell v. Hinton*, 556 So.2d 1037, 1041-42 (Miss.1990). In reaching this determination, the Court examines affidavits and other evidence to determine whether or not a triable issue exists. Our purpose is not to resolve such an issue. While the motion for summary judgment is designed to expose "sham" claims and defenses, it should not be used to circumvent a trial on the merits where there are genuine issues of material fact. M.R.C.P. 56 cmt. We employ a *de novo* standard of review of the lower court's grant of a summary judgment motion. *Saucier v. Biloxi Reg'l Med.Ctr.,* 708 So.2d 1351, 1354 (Miss. 1998)(citing *Townsend v. Estate of Gilbert*, 616 So.2d 333, 335 (Miss.1993)). "The evidence must be viewed in the light most favorable to the . . . non-moving part[y] and [that party is] to be given the benefit of every reasonable doubt." *Id.*(quoting *Townsend*, 616 So. 2d at 335).

**I. WHETHER ANY DEFECTS IN THE STATUTORY NOTICE LETTER REQUIRED BY § 11-46-11 MISS. CODE ANN. WERE WAIVED BY THE SCHOOL DISTRICT'S INSURANCE ADJUSTER WHEN HE INVESTIGATED AND REJECTED REAVES'S CLAIM.**

**II. WHETHER ANY DEFECTS IN THE STATUTORY NOTICE LETTER REQUIRED BY § 11-46-11 MISS. CODE ANN. WERE WAIVED BY THE SCHOOL DISTRICT'S PARTICIPATION IN DISCOVERY OR OTHERWISE CURED BY INFORMATION PROVIDED IN DISCOVERY.**

¶6. Reaves admits the notice letter her counsel sent to the superintendent did not meet the requirements of the Mississippi Tort Claims Act as prescribed by Miss. Code Ann.§ 11-46-11 (Supp. 1998). However, she asserts the deficiencies in the notice were waived by either the insurance adjuster's investigation and rejection of the claim or the participation of the appellees in discovery. Alternately, the appellant contends participation by the appellees in discovery cured any defects in notice. Randle and the school district assert that since the appellant failed to comply with the Act, its strict construction precludes waiver under the circumstances of this case.

¶7. The Mississippi Tort Claims Act is set out at § § 11-46-1, et. seq. Miss. Code Ann. (Supp. 1998). Section 11-46-11 states:

> (1) After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity, and, if the governmental entity is participating in a plan administered by the board pursuant to Section 11-46-7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof.

> (2) The notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

> (3) All actions brought under the provisions of this chapter shall be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based, and not after; provided, however, that the filing of a notice of claim as required by subsection (1) of this section shall serve to toll the statute of limitations for a period of ninety-five (95) days. The limitations period provided herein shall control and shall be exclusive in all actions subject to and brought under the provisions of this chapter, notwithstanding the nature of the claim, the label or other characterization the claimant may use to describe it, or the provisions of any other statute of limitations which would otherwise govern the type of claim or legal theory if it were not subject to or brought under the provisions of this chapter.

§ 11-46-11 Miss. Code Ann. (Supp. 1998).

¶8. This Court has recently held that the Act requires strict interpretation. Where invoices were submitted in lieu of a notice letter, these did not suffice to meet the notice requirement. ***City of Jackson v. Lumpkin*, 697 So.2d 1179, 1182 (Miss. 1997)**. Where a two sentence notice letter was sent to the liability insurance carrier instead of the "chief executive officer", we held that although the city did not reject the notification and answered the complaint it did not waive its defense. ***Carpenter v. Dawson*, 701 So.2d 806, 808 (Miss. 1997)**. As raised in the answer, the plaintiff's failure to comply with the statutory notice requirements was still a viable defense. ***Id.*** We also held, "The Legislature mandated that the required notice 'shall' be provided, and the trial judge correctly concluded that the statute should be strictly enforced. It would set a dangerous precedent if this Court were to ignore specific statutory requirements for notice." ***Id.***

¶9. The Mississippi Tort Claims Act stands in contrast to the old common law principle of sovereign immunity where an injured party was barred from recovery against a political subdivision. The Act was adopted to reduce the harsh effect of the common law. We have held that statutes such as this should be read reasonably. *See Bowen v. Flaherty,* 601 So.2d 860 (Miss. 1992). A letter of notice to the chief executive officer of the governmental entity is the only means the legislature prescribed through which sovereign immunity may be reached. However, the Act leaves the term "chief executive officer of the governmental entity"undefined. This language has proved overly broad and likely has created much hardship. In order to give reasonable meaning to the statute, we hold today that this term may be read to include any of the following: president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability. The purpose of the Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies.

¶10. When the simple requirements of the Act have been substantially complied with, jurisdiction will attach for the purposes of the Act. In this case, we find that Reaves substantially complied with the notice provisions of the Act. Her notice letter, sent to Superintendent Stevenson, lists the persons involved in the accident, when the accident occurred, where the accident occurred, and what vehicles were involved. Superintendent Stevenson is employed in an executive capacity by the school board and through this letter the board was put on notice of the claim. The board had a duty to inquire into the details of the claim.

¶11. In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient. Therefore, we need not consider the waiver of notice issues or other issues raised.

## CONCLUSION

¶12. Because the notice letter sent by counsel for Ashley Renee Reaves substantially complied with the notice provisions of the Act, we reverse and remand this case to the Leflore County Circuit Court for proceedings consistent with this opinion.

¶13. **REVERSED AND REMANDED.**

**PITTMAN, P.J., BANKS, ROBERTS AND WALLER, JJ., CONCUR. SULLIVAN, P.J., CONCURS IN RESULT ONLY. PRATHER, C.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SMITH, J. McRAE, J, CONCURS IN PART AND DISSENTS IN**

**PART WITHOUT SEPARATE WRITTEN OPINION.**

**PRATHER, CHIEF JUSTICE, DISSENTING:**

¶14. The majority today rejects the requirement of strict compliance with the notice provisions of the Tort Claims Act set forth in this Court's recent decisions of *City of Jackson v. Lumpkin*, 697 So.2d 1179 (Miss. 1997) and *Carpenter v. Dawson*, 701 So.2d 806 (Miss. 1997). I continue to agree with this Court's holdings in *Lumpkin* and *Carpenter*, and I accordingly dissent.

¶15. In *Carpenter*, this Court acknowledged that the notice requirements set forth by the Legislature in the Tort Claims Act constituted a litigation "pitfall" for plaintiffs' attorneys in this State, but we concluded that the requirements of § 11-46-11 were clear and unequivocal and must be enforced by this Court. This Court wrote in *Carpenter* that:

> It is clear that the notice provisions contained in the Torts Claims Act statutes constitute a litigation "pitfall" for plaintiffs' attorneys in cases filed against the state and its political subdivisions. The notice provisions in Miss. Code Ann. § 11-46-11 are detailed and set forth requirements for notice which differ from those in the Mississippi Rules of Civil Procedure, to which attorneys in this State are accustomed. In this context, mistakes in complying with the required notification procedures are not surprising, and the enforcement of the statutory notice provisions will, at times, bring about harsh results. The alternative, however, is that this Court and the trial courts ignore specific statutory requirements for notice phrased in mandatory language by the Legislature.

> The Legislature mandated that the required notice "shall" be provided, and the trial judge correctly concluded that the statute should be strictly enforced. It would set a dangerous precedent if this Court were to ignore specific statutory requirements for notice. This Court must enforce the statute as written, and the members of the bar will comply with the requirements therein, which are not overly burdensome or complicated. The main obstacle to compliance with the notice provisions is a lack of knowledge of the requirements therein, and this obstacle will presumably become less of a factor with the passage of time and with the assistance of continuing legal education. As always, the Legislature retains the authority to modify the statutory language in question.

*Carpenter*, 701 So.2d at 808.

¶16. The Legislature's mandate that plaintiffs notify the "chief executive officer" of pending claims in a specified manner should, in my view, be enforced as written. The majority concludes that an enforcement of the Legislature's own requirements regarding notice is somehow contrary to the Legislature's intent in enacting the Tort Claims Act. I find this argument to be questionable at best: the Legislature is fully capable of expressing its intent through the enactment and amendment of statutes, and I find nothing unclear or ambiguous in the language of § 11-46-11. The fact that the Legislature has not amended § 11-46-11 serves as another indication that *Lumpkin* and *Carpenter* properly interpreted the Legislature's intent in enacting the statute.

¶17. In interpreting statutes similar to § 11-46-11, the overwhelming majority of courts nationwide have expressed the view that the use of mandatory "shall" language in the notice requirements indicates that strict compliance with the statute was intended by the Legislature. J. James Frasier notes in "An Analysis of Recent Decisions Pertaining to the Mississippi Tort Claims Act" *Mississippi Lawyer,* (September, 1998) that:

> Mississippi's claim notice statute, § 11-46-11(1), states that plaintiffs "shall" file notice of claims 90 days prior to instituting suits against governmental entities. § 11-46-11(2) adds that plaintiffs "shall" give the notice in writing, deliver it by certain methods, and include in it certain specific information. Courts in other states interpreting similarly worded statutes have almost universally found such language to be indicative of legislative intent to establish a jurisdictional or condition precedent scheme, and to require strict compliance therewith.

This Court today abandons the "almost universal" interpretation of § 11-46-11 which we adopted scarcely over a year ago[1], in favor of a very liberal substantial compliance scheme.

¶18. In my view, a less stringent interpretation of § 11-46-11 might be appropriate if the facts of a particular case were such that the requirements of the statute were somehow rendered unclear or ambiguous. It is conceivable, for example, that a plaintiff might file suit against a governmental entity which was organized in such a way that it was unclear exactly which person constituted the "chief executive officer" to whom notice should properly be given. In such a situation, the statute might properly be considered to be ambiguous as applied to the facts of that case, and a less stringent application might be appropriate.

¶19. In the present case, however, it is clear that Reaves correctly dealt with the CEO of the school district (i.e. the superintendent), and it is undisputed that he failed to provide administrative notice in the manner required by statute. The issue in the present case is not whether the superintendent constitutes the CEO, but whether Reaves' non-compliance with the notice provisions of the Tort Claims Act was waived under the facts herein. As such, the majority's very broad interpretation of the term "chief executive officer" is, in my view, both incorrect[2] and irrelevant to the facts of the present case. Reaves' non-compliance with § 11-46-11 is not even in dispute in the present case, and Reaves raises no valid arguments as to why his non-compliance should be deemed to have been waived.

¶20. In my view, this Court's decisions in *Lumpkin* and *Carpenter* represent the proper interpretation of § 11-46-11, and the majority does not point out any errors of law or of reasoning in these decisions. This Court noted in *Carpenter* that the notice requirements of § 11-46-11 are not particularly complex, and the main obstacle to compliance with the statute is a lack of knowledge of the requirements therein. I remain of the view that this Court need only continue to enforce the statute as written and that the plaintiffs' bar will, eventually, comply with the requirements thereof[3]. In the event that a plaintiff fails to comply with the requirements of statute, however, this Court should properly follow the law instead of judicially re-writing the statute in order to excuse a plaintiff's non-compliance therewith. I would affirm the ruling of the trial court, and I respectfully dissent.

**SMITH, J., JOINS THIS OPINION.**

1. Even prior to this Court's decision in *Lumpkin*, the federal courts in this state had concluded that the

notice provisions of § 11-46-11 were jurisdictional in nature and that strict compliance with the provisions was required. See ***Simpson v. City of Pickens, Mississippi***, 887 F.Supp. 126, 130 (S.D. Miss. 1995), ***Moore v. Carroll County, Mississippi***, 960 F.Supp. 1084, 1087 (N.D. Miss. 1997).

2. I find it very difficult to accept, for example, that the proper definition of "chief executive officer" includes "any board member" or "secretary of a board." In most cases, the identity of the CEO will be very clear, e.g., the mayor of a municipality, the superintendent of a school board, etc. This Court should be more lenient if the identity of the CEO is unclear, but such a fact pattern is not before us in the present case.

3. I would note that strict compliance with the notice provisions of the Federal Tort Claims Act has long been required by the Federal courts. Plaintiffs' lawyers in this State have adapted themselves to the requirements of the Federal Tort Claims Act, and I submit that they are fully capable of complying with the Mississippi Tort Claims Act as well.