## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 97-CA-01063-SCT

*ALBERT N. FERRER, JR.*

*v.*

*JACKSON COUNTY BOARD OF SUPERVISORS*

*AND WILLIAM E. HOLLOWAY*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/07/97 |
| TRIAL JUDGE: | HON. BILL JONES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JERRY L. HUTCHERSON |
| | BERNARD GAUTIER |
| ATTORNEYS FOR APPELLEES: | GARY S. EVANS |
| | JACKYE L. CHAPMAN |
| | PEGGY G. MULLINS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 4/29/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/20/99 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. In this case, the Court is faced with the issue of whether substantial compliance with the notice requirements of Miss. Code Ann. § 11-46-11(1)(Supp. 1998), the Mississippi Tort Claims Act ("MTCA") , satisfies the requirements of the statute. This Court recently held that substantial compliance with the MTCA is sufficient and that the determination of substantial compliance is to be decided on a case-by-case basis. *Reaves v. Randall*, No. 97-CA-00982-SCT, 1998 WL 909578 (Miss. Dec. 31, 1998); *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. Feb. 11, 1999); *Alexander v. Mississippi Gaming Comm'n*, No. 98-CA-00295-SCT, 1999 WL 191856 (Miss. Apr. 8, 1999). We conclude that Ferrer's actions of communicating with the Board of Supervisors in the present case equate to substantial compliance. Accordingly, the judgment of the trial court is reversed, and this case is remanded for further proceedings consistent with this opinion.

**I.**

¶2. On November 1, 1996, Albert N. Ferrer, Jr., instituted this action in the Circuit Court of Jackson County, Mississippi, against William E. Holloway, a Jackson County Deputy Sheriff, and the Jackson County Board of Supervisors (hereinafter "the Board"). Ferrer's suit alleged that Holloway was negligently operating his patrol car when he collided with Ferrer's vehicle at an intersection in Pascagoula, Mississippi, on November 25, 1995. Holloway was dismissed from the case on June 6, 1997, leaving only the Board as a defendant in this action.

¶3. On April 10, 1997, the Board filed a motion for summary judgment. The Board's motion alleged that Ferrer had failed to file proper notice of his claim upon the chief executive officer of Jackson County, before filing suit, as statutorily mandated by Miss. Code Ann. § 11-46-11 (Supp. 1997), a part of the MTCA. Ferrer countered that the Board had actual notice of his claim due to a series of payments, letters and settlement offers between Ferrer and the Board.

¶4. The circuit court granted the Board's motion on August 7, 1997, holding that Ferrer had failed to file proper notice of his claim. Taking exception with the lower court's decision, Ferrer filed a notice of appeal with this Court on August 21, 1997, raising the following issues:

**I. FERRER MET THE REQUIREMENTS OF THE STATUTE BY GIVING ACTUAL, COMPREHENSIVE, AND DETAILED NOTICE TO THE PROPER AUTHORITY IN A TIMELY MANNER.**

**II. THE BOARD WAIVED ANY ADDITIONAL REQUIREMENTS OF NOTICE.**

**III. THE BOARD IS ESTOPPED FROM RAISING THE ISSUE OF LACK OF COMPLIANCE WITH THE REQUIREMENTS OF THE STATUTE.**

**IV. THE COURT'S RULING FOR THE BOARD ON THE MOTION FOR SUMMARY JUDGMENT WAS IN ERROR.**

## II.

¶5. The genesis of this case was an automobile collision that occurred on or about November 25, 1995, in Pascagoula, Jackson County, Mississippi. Ferrer alleges that the crash was caused when a police car, owned by the Board and operated by Deputy Sheriff William E. Holloway, was negligently driven through a red light at an intersection. Ferrer claimed that this collision caused him serious personal injury and property damage.

¶6. Soon after the accident occurred, settlement negotiations ensued between Ferrer and the Board via their respective attorneys, Jerry L. Hutcherson and Peggy G. Mullins. These discussions were conducted primarily through a series of letters between Hutcherson and Mullins.

¶7. The Board initially paid Ferrer approximately $10,000 for property damages and rental car expenses. Additionally, after receiving a copy of Ferrer's medical files, Jackson County's Insurance Committee approved a settlement offer of $15,404. Ferrer rejected this offer and made a counteroffer of $48,750. The Insurance Committee refused Ferrer's counteroffer and withdrew any and all prior settlement offers which it had communicated.

¶8. After negotiations between the parties dissolved, Ferrer filed his lawsuit on November 1, 1996. The

Board filed its answer and affirmative defenses on November 19, 1996. On April 10, 1997, the Board filed a motion for summary judgment contending that Ferrer had failed to provide the Board with ninety (90) days notice before filing his suit as required by § 11-46-11. Ferrer contended that although he did not strictly follow the notice requirement contained in § 11-46-11, the Board had complete and actual notice of his claim due to the protracted settlement negotiations in which the two (2) parties had engaged. A hearing on the matter was held June 6,1997. During the fifty-seven (57) intervening days between the Board's filing and the hearing, Ferrer did not file a response to the Board's motion, nor did he propound any additional discovery or request any depositions.

¶9. On August 12, 1997, the Circuit Court of Jackson County entered an order granting the Board's motion and holding that Ferrer's failure to provide the Board with ninety (90) days notice prior to filing his suit, as prescribed in § 11-46-11, was a basis for summary judgment. Aggrieved, Ferrer appeals to this Court.

### III.

¶10. While this Court has previously applied a standard of strict compliance in *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss. 1997), and *Carpenter v. Dawson*, 701 So. 2d 806 (Miss. 1997), the Court began to relax this standard to one of substantial compliance in *Reaves v. Randall*, No. 97-CA-00982-SCT, 1998 WL 909578 (Miss. Dec. 31, 1998). The Court has since embraced the substantial compliance rule fully, overruling both *Lumpkin* and *Carpenter* to the extent that they required strict compliance in *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. Feb. 11, 1999). In *Carr*, we stressed that the determination of substantial compliance is a legal as well as fact sensitive inquiry which must be decided on a case-by-case basis. *Id*.

¶11. In the present case, a summary of the communication between Ferrer and the Board is instructive in this regard:

1. December 20, 1995: Letter from the Board's special counsel, Kevin Bradley, to Ferrer making a property settlement offer of $8,660.43 and enclosing a release of property damage claims.

2. December 21, 1995: Ferrer signs and returns the property damage release form; unclear to whom it was returned although Bradley's letter instructs him that this form and the rental car costs claims forms should be returned to "us."

3. December 21, 1995: Ferrer signs and returns a partial release for rental car costs claims in consideration of $416.10.

4. February 13, 1996: Ferrer signs and returns a final release for rental cars costs claims in consideration of $1232.98.

5. May 23, 1996: Letter from Ferrer addressed to the Jackson County Board of Supervisors enclosing his medical files and informing them that he had temporarily released his attorney in hopes of reaching a settlement. A carbon copy was sent to Ferrer's attorney Jerry L. Hutcherson. There is a handwritten note at the bottom of the letter indicating that the letter was given to the County's risk manager, Wayne Howard.

6. July 3, 1996: Letter from Jerry L. Hutcherson to Board attorney Peggy Mullins informing her that

he plans to file suit against the County unless a settlement is reached in the next ten days. A carbon copy was sent to Wayne Howard.

7. July 19, 1996 Letter from Board attorney, Peggy Mullins to Jerry L. Hutcherson acknowledging receipt of his July 3rd letter and informing him that the Insurance Committee is reviewing Ferrer's claim in order to arrive at a settlement figure.

8. July 30, 1996 Letter from Mullins to Hutcherson proposing a settlement offer of $15,404.72.

9. August 9, 1996 Letter from Hutcherson to Mullins rejecting the Board's settlement offer because it did not account for pain and suffering. Hutcherson made a counteroffer of $48,750.00.

10. August 15, 1996 Letter from Mullins to Hutcherson withdrawing the $15,404.72 settlement offer and any other offers which were transmitted.

¶12. As evidenced by the above summary, the communication between Ferrer, the Board and its agents was prolonged, continuous and extensive. As a result of these discussions, information regarding Ferrer's claim was directed to and/or received by the following people associated with Jackson County: (1) The Board of Supervisors; (2) Peggy Mullins, the Board's attorney; (3) Kevin Bradley, the Board's special counsel; (4) the Jackson County Insurance Committee; and (5) Wayne Howard, the Jackson County Risk Manager.

¶13. All of the parties involved in the settlement discussions were directly associated with Jackson County and/or the Board of Supervisors. The information to be supplied by a notice of claim under § 11-46-11 was furnished to the county. Thus, this Court holds that Ferrer's communication with the Board and its agents substantially complied with the notice requirement in § 11-46-11.

## IV.

¶14. Ferrer alternatively argues that the Board waived the right to raise the issue of lack of notice or is estopped from raising the issue. While the concepts of waiver and estoppel are not synonymous, they both involve an analysis of the Board's actions regarding Ferrer's claim. Accordingly, these issues will be addressed in unison.

¶15. Ferrer contends that the Board waived any deficiency in the notice received when it paid him several thousand dollars in property damage claims and made a settlement offer of nearly $15,000. Ferrer says that the Board, by its acts, caused him to believe that the notice requirement was waived. We agree.

¶16. The extensive communication listed above between Ferrer and the Board put the Board on notice of Ferrer's claim. Further, the actions taken by the Board in paying Ferrer's property damage claims and proposing a settlement offer served to estop the Board from asserting the notice requirement.

¶17. Reason demands that the Board's participation in such an extensive dialogue with Ferrer over the course of nearly (2) years estops the Board from asserting any right to notice that once existed. The Board was attempting to have its cake and eat it too, by engaging in settlement discussions with Ferrer, then retreating to the protection of the Tort Claims Act once the negotiations went awry.

¶18. The Board's payment of Ferrer's property damage claim and its settlement offer estops the Board

from raising the notice requirement under § 11-46-11. Therefore, any right of the Board to raise the issue of notice was surrendered and can no longer serve as a ground for dismissing Ferrer's case. *See Carr, 1999 WL 62772, at \*5 ¶ 13*.

## V.

¶19. For the foregoing reasons, the judgment of the trial court is reversed, and this case is remanded to that court for further proceedings consistent with this opinion.

¶20. **REVERSED AND REMANDED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**