## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00026-SCT

*WYATT WILLIAMS*

*v.*

*SAMUEL KEITH TOLIVER, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS CONSTABLE OF BOLIVAR COUNTY, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/1997 |
| TRIAL JUDGE: | HON. JOHN L. HATCHER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JACK RHEA TANNEHILL, JR |
| ATTORNEYS FOR APPELLEE: | BENJAMIN E. GRIFFITH |
| | DANIEL JUDSON GRIFFITH |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART- 5/11/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/1/2000 |

**BEFORE PITTMAN AND BANKS, P.JJ., AND COBB, J.**

**PITTMAN, PRESIDING JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This is an appeal from the Bolivar County Circuit Court where summary judgment was granted in favor of defendant Samuel Keith Toliver ("Toliver"). Wyatt Williams ("Williams") sued Ned Holder, Individually and in His Official Capacity as Sheriff of Sunflower County, Mississippi; Ohio Casualty Insurance Company; Jackie Steed, Individually and In His Official Capacity as Deputy Sheriff of Sunflower County, Mississippi; and Samuel Keith Toliver, Individually and In His Official Capacity as Constable of Bolivar County, Mississippi, pursuant to the Mississippi Tort Claims Act, for injuries received during a high speed automobile chase and shootout.

¶2. Circuit Judge John Leslie Hatcher, in his ruling, found that Williams had failed to comply with the notice requirements of the Mississippi Tort Claims Act, Miss. Code Ann. § 11-46-11 (Supp. 1994). Judge

Hatcher also found that there was no genuine issue of material fact regarding Toliver's alleged arrest of Williams on the day of the incident. Judge Hatcher then went on to certify the judgment as final as to Toliver pursuant to M.R.C.P. 54(b).

## STATEMENT OF FACTS

¶3. Williams became involved in a domestic altercation with his girlfriend, Dolly Harris ("Harris"), at her home in Mound Bayou, Mississippi, on December 11, 1994. Toliver and Mound Bayou Policeman Kennedy Johnson ("Johnson") arrived on the scene. Both Toliver and Johnson ordered Williams to leave Harris's home. Toliver asserts that Williams actually fled the scene and engaged the police in a high speed chase for the purpose of avoiding lawful arrest. Toliver stated in his affidavit that when he told Williams that he was under arrest, Williams jumped in his car and fled the scene. Johnson corroborated this, stating that Toliver informed Williams that he was under arrest before Williams fled Harris's home. Williams asserts that neither Toliver nor Johnson attempted to arrest him at Harris's home.

¶4. Williams was later charged with reckless driving, assaulting an officer, and resisting arrest in Bolivar County as a result of affidavits filed by Toliver. Williams was never arrested or prosecuted for these charges. Williams was, however, arrested by Sunflower County Deputy Jackie Steed ("Steed") for failure to obey the command of an officer and disorderly conduct resulting from the reckless driving of his vehicle on December 12, 1994. Williams was convicted of these charges.

¶5. According to Williams, he left Harris's home voluntarily, heading to his mother's home in Drew, Mississippi. After traveling several miles, Williams noticed that both Toliver and Johnson were following him. Williams asserts that he was hesitant to pull over because he had heard of an affair between Harris and Toliver. He states he intended to head to the Drew Police Department where he could gain assistance if needed.

¶6. Williams then asserts that Toliver, during the chase, radioed that Williams had a firearm and was shooting at both Toliver and Johnson. Toliver stated that after chasing Williams a few miles down the road, Williams stopped his car, jumped out and pointed a gun at him. Toliver stated that Williams stopped his car, opened the door, then sped off again four or five times during the chase. Toliver denied ever saying that Williams had fired at him. Toliver stated that Johnson is the person who actually radioed that Williams had fired a gun. Toliver maintained that he simply repeated what Johnson had said: that Williams had fired at him.

¶7. Williams claims that he does not own a weapon and was not in possession of one at the time of the incident. The police did not find a weapon after Williams was stopped nor did any officer see Williams throw anything from his vehicle. Toliver, however, reported that he could see Williams with a brown weapon in his hand. The only thing found in Williams's vehicle after the chase was a brown hairbrush.

¶8. Sunflower County Sheriff Ned Holder ("Holder"), when hearing of the approaching chase, ordered that no one was to be harmed. However, Sunflower County Deputy Sheriff Coy Fulgham fired two warning shots in the air when Williams approached the road block he had set up.

¶9. Sunflower County Deputy Sheriff Steed fired at Williams's car as Williams tried to slow down. Steed stated that he could not see Williams's hands on the steering wheel, so he tried to disable Williams's car by firing at the front tire. Steed's shots hit Williams, hitting him in the back, leg, and shoulder. Williams was

dragged from his vehicle, handcuffed, and left on the ground until medical assistance arrived.

## STATEMENT OF ISSUES

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER'S MOTION FOR SUMMARY JUDGMENT ON THE GROUNDS THAT WILLIAMS FAILED TO COMPLY WITH THE MANDATORY NOTICE REQUIREMENTS OF THE MISSISSIPPI TORT CLAIMS ACT, MISS. CODE ANN. § 11-46-11 IN PROVIDING NOTICE TO TOLIVER**.

**II. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER SUMMARY JUDGMENT ON THE GROUNDS THAT WILLIAMS WAS NOT FALSELY ARRESTED BY TOLIVER.**

**III. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER SUMMARY JUDGMENT ON WILLIAMS' CLAIMS FOR NEGLIGENT MISREPRESENTATION, INTENTIONAL MISREPRESENTATION AND NEGLIGENCE.**

## STANDARD OF REVIEW

¶10. The standard of review governing the granting or denial of summary judgment is well settled in Mississippi:

> The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts de novo review of orders granting or denying summary judgment and looks at all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to a judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant would be given the benefit of the doubt.

> *Lumberman's Underwriting Alliance v. City of Rosedale*, 727 So.2d 710, 712-13 (Miss.1998) (quoting *Aetna Casualty & Surety Co. v. Berry*, 669 So.2d 56 (Miss.1996)).

> This Court has further stated that

> ... [A] motion for summary judgment should be denied unless the trial court finds beyond any reasonable doubt that the plaintiff would be unable to prove any facts to support his/her claim.

> *Lumberman's Underwriting Alliance*, 727 So.2d at 713.

*Rush v. Casino Magic Corp.*, 744 So.2d 761, 763 (Miss. 1999).

## DISCUSSION

**I. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER'S MOTION**

**FOR SUMMARY JUDGMENT ON THE GROUNDS THAT WILLIAMS FAILED TO COMPLY WITH THE MANDATORY NOTICE REQUIREMENTS OF THE MISSISSIPPI TORT CLAIMS ACT, MISS. CODE ANN. § 11-46-11 IN PROVIDING NOTICE TO TOLIVER.**

¶11. Miss. Code Ann. § 11-46-11(2) sets out the requirements for notice under the Mississippi Tort Claims Act:

(2) The notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(2)(Supp. 1999). Toliver argues that because he was identified as Sunflower County Constable Keith Toliver and not Bolivar County Constable Samuel Keith Toliver, Williams has failed to provide "the names of all persons known to be involved." Toliver argues that not only has Williams failed to strictly comply with the requirements, he has failed to substantially comply with the notice requirements.

¶12. This Court in the recent past has required strict compliance with the notice provisions of the Mississippi Tort Claims Act. In *Reaves ex rel. Rouse v. Randall*, 729 So.2d 1237 (Miss. 1998), we relaxed the standard from one of strict compliance to one of substantial compliance. In *Carr v. Town of Shubuta*, 733 So.2d 261 (Miss. 1999), we overruled those cases that required strict compliance (to the extent that they required strict compliance): *City of Jackson v. Lumpkin*, 697 So.2d 1179 (Miss. 1997); *Carpenter v. Dawson*, 701 So.2d 806 (Miss. 1997); and *Holmes v. Defer*, 722 So.2d 624 (Miss. 1998).

¶13. As both Williams and Toliver note, "[t]he determination of substantial compliance is a legal, though fact-sensitive, question and is, therefore, necessarily decided on an ad hoc basis." *Carr*, 733 So.2d at 265. The question before this Court, then, is whether the notice delivered to the Bolivar County Administrator was sufficient notice as required by Miss. Code Ann. § 11-46-11(2).

¶14. The Notice of Claim delivered to the County Administrator of Bolivar County read:

The names of the persons known to be involved are: Ned Holder, Sheriff of Sunflower County; Jackie Steed, Deputy Sheriff of Sunflower County; **Keith Toliver, Constable of District One of Sunflower County, Mississippi and Police Officer of Mound Bayou**; and Keith Johnson, Police office of Mound Bayou.

(emphasis added.) The Notice of Claim delivered to the County Administrator and the Chancery Clerk of Sunflower County read:

The names of the persons known to be involved are: Ned Holder, Sheriff of Sunflower County; Jackie Steed, Deputy Sheriff of Sunflower County; **Keith Toliver, Constable of District One of Bolivar County, Mississippi and Police Officer of Mound Bayou**.

(emphasis added.) Toliver maintains that the notice

> did not inform Bolivar County of Appellant Williams' intent to assert a claim against Bolivar County or an official of Bolivar County, nor did it contain sufficient information which reasonably afforded Bolivar County an opportunity to promptly investigate the claim. Bolivar County had no reason to investigate a claim against a constable from Sunflower County, as was made clear, moreover, by Bolivar County Administrator Wanda Ray who stated in her unchallenged affidavit:

> I have no independent knowledge of whether or not Attorney Turnage was intending to refer to Bolivar County District 1 Constable Samuel Keith Toliver or not.

¶15. The notice sent to Bolivar County Administrator Ray was sufficient to put Bolivar County on notice. After reviewing Ray's affidavit, it is clear that she knew of the existence of Samuel Keith Toliver as Constable of Bolivar County.

¶16. An examination of the statutes regarding county administrators and constables allows one to infer that the administrator, through administering county affairs, would have knowledge, as well as contact, with county constables. Miss. Code Ann. § 19-4-1 states that a county's board of supervisors may appoint or employ a county administrator. The same section also states that the administrator "shall administer all county affairs falling under the control of the board and carry out the general policies of the board. . ." Miss. Code Ann. § 19-14-1 (1989).

¶17. Miss. Code Ann. § 19-19-1 (1987) states that the board of supervisors is responsible for furnishing constables with uniforms, some type of motor vehicle identification to show use in official capacity, and flashing blue lights for the constable's vehicle. Section 19-19-5 requires that the board of supervisors pay the tuition, living, and travel expenses incurred by a constable attending the mandated training program. Miss. Code Ann. § 19-19-5 (1993).

¶18. Ray, the Bolivar County Administrator, is charged with carrying out the affairs and general policies of the Bolivar County Board of Supervisors. Miss. Code Ann. § 19-14-1 (1989). The Bolivar County Board of Supervisors is required to supply Toliver, as Bolivar County Constable, with uniforms, vehicle identification, and blue lights for his vehicle. Miss. Code Ann. § 19-19-1 (1987). Toliver had been constable for some 12 years at the time of this incident. It is inconceivable that Ray, as administrator of Bolivar County, would not recognize that the "**Keith Toliver, Constable of District One of Sunflower County, Mississippi and Police Officer of Mound Bayou**" listed in the notice served on her was Samuel Keith Toliver, Constable of District One of Bolivar County.

¶19. The trial judge erred in granting summary judgment in favor of Toliver on the basis that Williams had failed to comply with the notice requirements of Miss. Code Ann. § 11-46-11.

### II. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER'S SUMMARY JUDGMENT ON THE GROUNDS THAT WILLIAMS WAS NOT FALSELY ARRESTED BY TOLIVER.

¶20. The trial judge, in his Memorandum Opinion, stated that there was "no genuine issue of material fact as to whether or not Defendant Toliver ever arrested Plaintiff." The trial judge noted that Williams, in his deposition stated that Toliver did not arrest Williams at Harris's home, nor did he arrest Williams at any other time that day. Toliver argues that there is no genuine issue of material fact regarding an arrest of

Williams. Toliver states that he never arrested Williams on the date of the incident.

¶21. A motion for summary judgment should be denied when "one party swears to one version of the matter in issue and another says the opposite." *Rush*, 744 So.2d at 763. Upon review of the record before the trial judge, a plethora of evidence can be found that creates an issue of material fact. Depositions were given and affidavits were sworn to that state Toliver never arrested Williams. Depositions were given and affidavits were sworn to that state that Toliver did arrest Williams. In fact, both parties seem to be confused as to what really happened that day.

¶22. In his answer to Williams's complaint, Toliver pled several affirmative defenses that admit that he had arrested Williams:

### FOURTH DEFENSE

The pursuit of Plaintiff, Wyatt Williams, by Defendant Toliver was subsequent to Defendant **Toliver advising Plaintiff that he was under arrest** for a misdemeanor offense . . . .

### FIFTH DEFENSE

**Plaintiff's arrest** was based upon probable cause to arrest since, at the **time of the arrest**, the **arresting officer** had knowledge that would warrant a prudent person's belief that Plaintiff, Wyatt Williams, had committed a misdemeanor crime in the presence of an officer, . . .

(emphasis added).

¶23. Toliver later gave a sworn deposition where he affirmatively stated several times that he had placed Williams under arrest at Harris's home.

Q. What was he saying? Words like what?

A. . . . He started going, and he repeat [sic] the same thing again. I said, "Wyatt, I asked you nicely to stop it. You need to get in your car and go." He say [sic] it again. I said, "**You're under arrest**." When I say [sic] he's under arrest, he jump [sic] in his car, . . .

* * *

Q. So you told him that he was under arrest?

A. . . . When he got to the car, he shouted again. I said, "Wyatt, **you're under arrest**." Then he ran, jumped in his station wagon.

* * *

Q: Let me ask you this question. You first told him he was **under arrest** back at Dolly's house.

A. Yes, sir.

Q. You say him and Kent and Jimmy Stokes was on the porch.

A. Yes, sir.

Q. What was he under arrest for at that point in time?

A. **He's under arrest** because he had Dolly Harris in fear, using profanity, and refusing to obey a law officer.

(emphasis added).

¶24. Williams himself gave an affidavit wherein he stated that Toliver gave him the choice of leaving the scene or being placed under arrest. Williams stated that he then left the scene without being arrested.

¶25. Williams, in his deposition, stated numerous times that Toliver had not arrested him at Harris's home:

Q. You left because Officer Toliver told you you were under arrest.

A. No. That's not true there.

* * *

Q. Okay. So it's your testimony that on that day at no time did Sam Toliver ever arrest you, correct?

A. Correct.

* * *

Q. Did he [Toliver] in fact tell you that you would be under arrest if you didn't cease the disturbance?

A. No.

Williams, himself, seems to be confused as to whether Toliver actually arrested him that day.

¶26. Other witnesses gave varying accounts as to the happenings at Harris's home that day. Kent Johnson, a Mound Bayou police officer at the scene, gave a statement that he heard Toliver tell Williams that he would arrest him if he did not leave Harris's residence. Johnson went on to say that he never actually heard Toliver place Williams under arrest. However, Johnson gave a deposition in which he stated that "[Toliver] had in fact advised [Williams] that he was under arrest before leaving the Harris property and that he had heard [Toliver] do so." Later in the same deposition, Johnson stated that "[Toliver] told [Williams] to stop that he was under arrest."

¶27. Jimmy Stokes, the bondsman who had earlier bailed Williams out of jail, testified in his deposition that he never heard Toliver tell Williams that he was under arrest. Bill Myers, an expert on police policies and pursuits, gave an affidavit wherein he stated that Williams had not been arrested when the pursuit began. He further stated that there was no arrest of Williams at Harris's home. Harris, however, gave an affidavit where she stated that Toliver did tell Williams that he was under arrest after Williams failed to leave the scene.

¶28. With such varying accounts as to what actually occurred at Harris's home, the trial judge erred in granting summary judgment to Toliver on the issue of arrest.

### III. WHETHER THE TRIAL COURT ERRED IN GRANTING TOLIVER SUMMARY JUDGMENT ON WILLIAMS' CLAIMS FOR NEGLIGENT MISREPRESENTATION,

**INTENTIONAL MISREPRESENTATION AND NEGLIGENCE.**

¶29. The memorandum opinion of the trial judge granting summary judgment only granted summary judgment on the issues of notice and false arrest. This issue is not properly before this Court.

## CONCLUSION

¶30. After careful review, this Court finds that the Bolivar County Circuit Court erred in granting summary judgment to Toliver by finding that Williams did not comply with the notice requirements of the Mississippi Tort Claims Act. Williams did, in fact, substantially comply with the notice requirements set forth in Miss. Code Ann. § 11-46-11(2) (Supp. 1999). As to this issue, the judgment of the Bolivar County Circuit Court is reversed and rendered.

¶31. The Bolivar County Circuit Court also erred in finding that no material issue of fact existed as to whether Williams was actually arrested by Toliver. There exists sworn testimony in the record that Williams was not arrested by Toliver. There also exists sworn testimony that Williams was arrested by Toliver. As to this issue, the judgment of the Bolivar County Circuit Court is reversed.

¶32. The judgment of the Bolivar County Circuit Court is reversed, and this case is remanded to the circuit court for proceedings consistent with this opinion.

¶33. **REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.**

> **PRATHER, C.J., BANKS, P.J., McRAE, MILLS, WALLER AND COBB, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**

> **SMITH, JUSTICE, DISSENTING:**

¶34. The majority, relying upon ***Reaves v. Randall***, 729 So. 2d 1237 (Miss. 1998), and ***Carr v. Town of Shubuta***, 733 So. 2d 261 (Miss. 1999), finds that Wyatt Williams has substantially complied the with notice requirements of Miss. Code Ann. § 11-46-11(2)(Supp. 1999). I disagree and accordingly dissent.

¶35. The notice sent to Bolivar County by Williams identified a Keith Toliver, Sunflower County Constable, as "the name of a person known to be involved." The majority holds that, "The notice sent to Bolivar County Administrator Ray was sufficient to put Bolivar County on notice." Majority Op. at 7. In my view, this notice was wholly defective and considering Ray's affidavit, I do not find that it contained sufficient information which would have served as a basis for Administrator Wanda Ray of Bolivar County to investigate a claim against a constable of Sunflower County supposedly named Keith Toliver. The information furnished was simply incorrect. The Tort Claims Act's notice requirement is there for the purpose of giving the government agency involved the opportunity to investigate a claim by a plaintiff and further so that the appropriate officials may be notified. In fact, the notice given here is simply defective and was non-compliant with the Tort Claims Act. This is a factor to be considered and decided by the trial court. This Court has stated, "[W]e stressed that substantial compliance is not the same as, nor a substitute for, non-compliance and that the determination of substantial compliance is a legal, though fact-sensitive, inquiry which must be decided on an ad hoc basis."***Alexander v. Mississippi Gaming Comm'n***, 735 So. 2d 360, 363 (Miss. 1999) (citing ***Carr***, 733 So. 2d at 265). This defective and incorrect notice sent to the Bolivar County Administrator did not name an official, employee, or any other representative of Bolivar

County. How could Ms. Ray have known that the Sunflower County Constable referred to as Keith Toliver was actually Bolivar County Constable, Samuel Keith Toliver? Her affidavit clearly provides the answer in the negative.

¶36. For these reasons, I respectfully dissent.