## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00506-SCT

*LINDA McNAIR*

*v.*

*UNIVERSITY OF MISSISSIPPI MEDICAL CENTER AND ANTHONY JONES*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/06/1998 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | BEVERLY D. POOLE |
| ATTORNEY FOR APPELLEES: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ROBERT G. JENKINS |
| NATURE OF THE CASE: | CIVIL - TORTS - OTHER THAN PERSONAL INJURY AND PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND REMANDED - 06/03/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 6/24/99 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

### STATEMENT OF THE ISSUE

¶1. The issue before this Court is whether the Plaintiff's failure to strictly comply with the notice provisions of the Mississippi Torts Claims Act (hereinafter the Act) justified a dismissal of her complaint, where (1) her "notice of claim" letter was sent to the Administrator of the University Medical Center instead of the Chief Executive Officer as required by the Act, and (2) the notice letter was sent by United States mail, postage prepaid, and not sent by certified mail or hand delivery.

### STATEMENT OF THE CASE

¶2. On January 10, 1996, Appellant Linda McNair (now Long) (McNair) filed a complaint in the Circuit Court of the First Judicial District of Hinds County against Appellees University of Mississippi Medical

Center and Anthony Jones ("UMC"). In her complaint, McNair sought damages in the amount of $100,000 for injuries allegedly received on January 20, 1995, when Officer Jones, a member of the hospital's campus police, twisted her arm behind her back in the process of handcuffing her.

¶3. On February 16, 1996, UMC filed a Motion to Dismiss or Alternatively to Hold in Abeyance These Pleadings asserting, among other things, that McNair had failed to comply with the notice of claim requirements provided in Miss. Code Ann. § 11-46-11 (Supp. 1998). On February 29, 1996, McNair filed a Response to the Defendant's Motion to Dismiss or Alternatively to Hold in Abeyance These Pleadings arguing she had substantially complied with the notice of claim requirements.

¶4. On January 22, 1998, McNair filed an Amended Response arguing more specifically that she had made a good faith effort to comply with the notice of claim requirements, that she had complied with the requirements in all substantial respects, and that UMC should have had ample time to investigate the claim since it received actual notice of the claim. McNair attached three exhibits to her Amended Response: Exhibit A is a copy of McNair's notice of claim letter dated October 5, 1995, and addressed to Mr. Ted Woodrell, Director of Hospital and Clinics, University Medical Center. Exhibit B is the Affidavit of Attorney Beverly D. Poole attesting to the good faith effort she made to ascertain the identity of the chief executive officer of UMC. Exhibit C is a letter written by McNair's previous attorney, Abe Rotwein, dated February 15, 1995, which was forwarded by United States mail, postage prepaid, and addressed to the legal department of UMC informing the hospital of her claim.

¶5. On February 9, 1998, Circuit Court Judge James E. Graves, Jr. entered an Order of Dismissal, with prejudice, on the basis that McNair failed to comply with the notice requirements of Miss. Code Ann. § 11-46-11 in two respects (1) she did not mail her notice of claim letter to Dr. A. Wallace Conerly, the Chief Executive Officer of UMC, but instead mailed her notice of claim letter to Mr. Ted Woodrell, Director of Hospital and Clinics at UMC; and (2) she mailed her notice of claim letter by regular United States Mail, and not by certified or registered mail or hand delivery. On February 19, 1998, McNair filed a Motion to Reconsider, and said Motion was denied on February 20, 1998.

¶6. Aggrieved by these orders, McNair filed her Notice of Appeal to this Court on March 20, 1998.

## STATEMENT OF THE FACTS

¶7. The critical facts in this case are not in dispute. On January 20, 1995, Linda McNair was employed at UMC as a medical technician. That morning McNair was off duty and had taken her father, Freeman Brown, to the UMC emergency room, where he was admitted with internal and external bleeding and liver problems. McNair was at the nurses' station providing information needed by the hospital concerning her father.

¶8. Anthony Jones, a member of the UMC campus police, approached McNair and demanded she leave the hospital because only authorized personnel were allowed in the area. McNair told Officer Jones she would do so once the hospital had all the necessary information on her father. Officer Jones confronted her again and ordered her to leave immediately. He then handcuffed her, and in the process, twisted her arm behind her back, shoving it upwards, causing injuries to McNair's arm, shoulder, and back, particularly a rotator cuff injury to her arm. Thereafter, McNair filed an offense report with the UMC Campus Police, and they investigated the incident.

¶9. McNair subsequently underwent arthroscopic surgery on her shoulder, went through months of physical therapy, and endured numerous painful steroid injections. She incurred almost $20,000 in medical bills due to the injuries.

¶10. On February 15, 1995, Attorney Abe Rotwein forwarded a letter on behalf of McNair addressed to the Legal Department of UMC notifying UMC of McNair's claim. On October 5, 1995, Attorney Beverly Poole forwarded, on behalf of McNair, a formal notice of claim letter addressed to Mr. Ted Woodrell, Director of Hospital and Clinics at UMC. The formal notice of claim letter failed to strictly comply with the notice provisions of the Act in two respects (1) it was sent to the Administrator of the University Medical Center instead of the Chief Executive Officer, and (2) it was sent by United States mail, postage prepaid, and not sent by certified mail or hand delivery.

## STATEMENT OF THE LAW

¶11. Section 11-46-11 in the Mississippi Tort Claims Act (hereinafter the Act) requires a plaintiff filing a claim against a governmental entity to file a notice of claim with the chief executive officer of the governmental entity ninety days before filing the complaint. Miss. Code Ann. § 11-46-11(1) (Supp. 1998). The Act also requires the notice of claim be in writing and delivered in person or by registered or certified United States mail. Miss. Code Ann. § 11-46-11 (2) (Supp. 1998).

¶12. UMC asserts that because McNair failed to strictly comply with the notice provisions of the Act her Complaint was properly dismissed. In support of its position, UMC relies on this Court's decisions in *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss. 1997) and *Carpenter v. Dawson*, 701 So. 2d 806 (Miss. 1997).

¶13. McNair asserts her Complaint should not have been dismissed for failure to strictly comply with the notice provisions of the Act because (1) she complied with the Act in all substantial respects; (2) she made a good faith effort to determine the identity of the chief executive officer; and (3) the notice provisions of the Act were designed to allow the government an opportunity to investigate a plaintiff's claim and UMC had a unique opportunity to investigate her claim.

¶14. The two cases primarily relied upon by the lower court in dismissing McNair's Complaint were *City of Jackson v. Lumpkin*, 697 So. 2d 1179 (Miss. 1997) and *Carpenter v. Dawson*, 701 So. 2d 806 (Miss. 1997). These cases were overruled by *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. Feb. 11, 1999), to the extent those opinions require strict compliance with the notice requirements of the Act. The standard recently adopted by this Court requires only substantial compliance. *Reaves v. Randall*, No. 97-CA-00982-SCT, 1998 WL 909578, *4 (Miss. Dec. 31, 1998) ("[w]hen the simple requirements of the Act have been substantially complied with, jurisdiction will attach for purposes of the Act."); *Carr v. Town of Shubuta*, 1999 WL 62772. Therefore, UMC's argument that McNair's failure to strictly comply with the notice requirements of Section 11-46-11 warrants dismissal of her complaint is without merit.

¶15. The question, then, becomes whether McNair satisfied the new substantial compliance standard where (1) the notice of claim letter was sent to the Administrator of the University Medical Center instead of the Chief Executive Officer, and (2) the notice of claim letter was sent by United States mail, postage prepaid, and not by certified mail or hand delivery as required by the Act .

¶16. In *Reaves*, this Court defined the term "chief executive officer of the governmental entity" in § 11-46-11(1) as including the "president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability." *Reaves*, 1998 WL 909578 at \*4; *see also* ***Tennessee Valley Reg'l Hous. Auth. v. Bailey***, No. 98-IA-00319-SCT, 1999 WL 275234 (Miss. May 6, 1999), ***Alexander v. Miss. Gaming Comm'n***, No. 98-CA-00295-SCT, 1999 WL 191856 (Miss. April 8, 1999). Here, McNair provided written notice of her claim to Mr. Ted Woodrell, Director of Hospital and Clinics, instead of Dr. Wallace Conerly, the Chief Executive Officer of UMC.

¶17. However, prior to mailing her notice of claim letter, McNair and her attorney, Beverly Poole, made good faith efforts to ascertain the identity of the chief executive officer of UMC. McNair, herself an employee of UMC, asked four or five people who worked with her who the chief executive officer was, and she was told it was most likely Mr. Ted Woodrell, the Hospital Administrator, since he was head of the hospital. McNair's attorney called the hospital to inquire as to the name of the hospital's chief executive officer and was ultimately informed that the head of the hospital was Ted Woodrell, Director of Hospital and Clinics. Based on these facts, it was not unreasonable for McNair to rely on the representations of hospital employees that Ted Woodrell was the head of the hospital and therefore the chief executive officer.

¶18. McNair also argues the purpose of the Act's notice provisions is to place the governmental entity "on notice" of the claim in order to give it an opportunity to investigate the claim. McNair suggests UMC had a unique opportunity to investigate her claim immediately after the accident occurred, and long before any notice of claim letter was ever forwarded to the hospital, because:

a. both McNair and Jones were employees of the hospital;

b. the incident took place on the hospital's premises;

c. all witnesses to the incident were hospital employees and physicians;

d. the majority of McNair's medical treatment for her injuries was rendered at the hospital;

e. the hospital had access to McNair's medical records and inside information from her doctors;

f. an immediate investigation of the incident was made by UMC Campus Police, and McNair herself completed an offense report and turned it over to the UMC Campus Police on the same day of the incident.

¶19. Additititionally, UMC received formal written notice of McNair's claim. The first formal notice UMC had of McNair's claim was by letter dated February 15, 1995, from Attorney Abe Rotwein addressed to the Legal Department of UMC. While this letter was not written for the purpose of satisfying the provisions of the Act, it did give enough details of McNair's claim to put the hospital on notice of her claim. The second notice of McNair's claim was by a formal notice of claim letter dated October 5, 1995, from Attorney Beverly Poole, McNair's second attorney, addressed to Mr. Ted Woodrell, Director of Hospital and Clinics at UMC. While McNair admits this notice of claim letter was sent via U.S. mail instead of by certified mail or hand delivery, as required by § 11-46-11(2), we find such a failure to comply with the statute is not fatal to her lawsuit. *See **Thornburg v. Magnolia Reg'l Health Ctr.***, No. 1998-CA-01287-SCT, 1999 WL 298627, \*4 (Miss. May 13, 1999) (holding in cases in which the governmental entity has (1) received notice and (2) suffered no actual prejudice, a plaintiff's failure to comply with § 11-46-11(2) by sending a notice of claim letter by first class mail should not result in dismissal of the case). It is

undisputed that McNair's letter was ultimately forwarded to the proper person at UMC and that UMC actually received this notice.

¶20. After the letter was received and after suit was filed, McNair's attorney communicated regularly for over one year with UMC attorneys, who presented information concerning the claim to the Tort Claims Board of the hospital. Several settlement offers were made by the Board and settlement negotiations continued from June 1996 to October 23, 1997. Based on these facts, we find UMC received sufficient notice of McNair's claim to permit the hospital to investigate her claim, and UMC suffered no actual prejudice as a result of McNair's failure to strictly comply with § 11-46-11(2).

## CONCLUSION

¶21. Despite the fact that McNair's notice of claim letter was sent to the wrong person and sent via an improper route, we find McNair substantially satisfied the notice requirements of the Act. McNair made a reasonable, good faith effort to comply with the statute's requirements. Furthermore, UMC received actual notice of her claim, and UMC suffered no actual prejudice as a result of McNair's failure to comply with § 11-46-11(2).

¶22. For these reasons, the order of dismissal entered by the lower court is reversed, and this case is remanded for further proceedings consistent with this opinion.

¶23. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**