**IN THE SUPREME COURT OF MISSISSIPPI**
**NO. 98-CA-00331-SCT**

*GLENNIDRA LATTIMORE AND MICHAEL NAYLOR*

*v.*

*CITY OF LAUREL, MISSISSIPPI AND JEFFERY CHANDLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/02/1998 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | EUGENE C. TULLOS |
| ATTORNEYS FOR APPELLEES: | HAROLD WAITS MELVIN |
| | PATRICIA FRANCINE MELVIN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | REVERSED AND REMANDED- 4/22/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/13/99 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

**STATEMENT OF THE CASE**

¶1. On February 3, 1995, Appellants Glennidra Lattimore and Michael Naylor (hereinafter "Lattimore") were involved in an automobile accident with a fire truck owned by the Appellee the City of Laurel and operated by Appellee Fireman Jeffery Chandler (hereinafter "Laurel"). The accident occurred at the intersection of Speck Wilson Drive and Carroll Gartin Drive in Laurel, Mississippi. On February 2, 1996, one day prior to the running of the one year statute of limitations, Eugene C. Tullos, attorney for Lattimore, filed suit on behalf of Lattimore with service of process by certified mail, return receipt requested.

¶2. On April 1, 1996, Laurel filed their motion for summary judgment alleging no genuine issue of material fact. Specifically, Laurel alleged that Lattimore failed to comply with Section 11-46-11(1) & (2) of the Mississippi Tort Claims Act (hereinafter the "MTCA") by not providing written pre-suit notice of claim to the city. In the response to the motion for summary judgment, Tullos testified by affidavit that on February 6, 1995, he mailed a copy of his letter of representation to the City of Laurel and Jeffrey Chandler advising them of his representation in this matter.

¶3. After a hearing on the motion for summary judgment, the County Court Judge granted summary

judgment for Laurel, because Section 11-46-11 applied and should have been strictly followed. Lattimore timely appealed to the Circuit Court of Jones County, Mississippi. After review of the record and the parties' briefs, the circuit court affirmed the county court's judgment.

¶4. Aggrieved, Lattimore and Naylor now appeal to this Court and raise the following contention of error:

**I. THE COURT IMPROPERLY GRANTED LAUREL'S MOTION FOR SUMMARY JUDGMENT BECAUSE LATTIMORE GAVE SUFFICIENT NOTICE TO LAUREL TO SATISFY THE REQUIREMENTS FOUND IN § 11-46-11 (1) AND (2) OF THE MISSISSIPPI CODE OF 1972 (ANNOTATED).**

## STANDARD OF REVIEW

¶5. The summary judgment motion is the only pretrial motion which allows the Court to "go behind the pleadings" and consider evidence such as admissions, answers to interrogatories, depositions, and affidavits. If this examination indicates there is no genuine issue of material fact, the moving party is entitled to a judgment as a matter of law. *Newell v. Hinton*, 556 So.2d 1037, 1041-42 (Miss.1990). In reaching this determination, the Court examines affidavits and other evidence to determine whether or not a triable issue exists. Our purpose is not to resolve such an issue. While the motion for summary judgment is designed to expose "sham" claims and defenses, it should not be used to circumvent a trial on the merits where there are genuine issues of material fact. M.R.C.P. 56 cmt. We employ a *de novo* standard of review of the lower court's grant of a summary judgment motion. *Saucier ex rel. Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So.2d 1351, 1354 (Miss.1998)(*citing* **Townsend v. Estate of Gilbert**, 616 So.2d 333, 335 (Miss.1993)). "The evidence must be viewed in the light most favorable to the ... non-moving part [y] and [that party is] to be given the benefit of every reasonable doubt." *Id*. (*quoting* **Townsend**, 616 So.2d at 335).

## DISCUSSION OF LAW

**I. WHETHER THE COURT IMPROPERLY GRANTED LAUREL'S MOTION FOR SUMMARY JUDGMENT BECAUSE LATTIMORE GAVE SUFFICIENT NOTICE TO LAUREL TO SATISFY THE REQUIREMENTS FOUND IN § 11-46-11 (1) AND (2) OF THE MISSISSIPPI CODE OF 1972 (ANNOTATED).**

¶6. Section 11-46-11(1) and (2) state, as follows:

(1) After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity, and, if the governmental entity is participating in a plan administered by the board pursuant to Section 11-46-7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof.

(2) The **notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail.** Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence

of the person making the claim at the time of the injury and at the time of filing the notice.

. . . .

Miss. Code Ann. § 11-46-11 (1) & (2) (Supp. 1998) (emphasis added). It is uncontested that Lattimore failed to strictly follow the statute's guidelines.

¶7. Lattimore however contests the "arbitrary and strict notice of claim requirement" and the "lack of a constructive or actual notice provision" in Section 11-46-11 (1) & (2). Lattimore further admits that this Court has already specifically addressed the notice of claim requirements of Section 11-46-11, but request this Court to reconsider its strict interpretation in *City of Jackson v. Lumpkin*, 697 So.2d 1179 (Miss. 1997), and apply a substantial compliance standard instead.

¶8. Since the submission of the parties' briefs, this Court announced a substantial compliance standard on a case-by-case factual analysis. *Reaves v. Randall*, No. 97-CA-00982-SCT, 1999 WL ------ (Miss. March 25, 1999). In *Reaves*, this Court held, "In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provisions of the Act is sufficient." *Id*. at ¶11. Therefore, in *Reaves*, this Court carved out an exception to the strict interpretation of the Act announced in *Lumpkin*.

¶9. Furthermore, in *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT,1999 WL 62772 (Miss. Feb. 11, 1999), this Court announced that the strict compliance standard found in *Lumpkin* as well as its progeny--*Carpenter v. Dawson*, 701 So.2d 806 (Miss. 1997) and *Holmes v. Defer*, 722 So.2d 624 (Miss. 1998)-was overruled. *Carr* at *2.

¶10. The question would then become whether Lattimore substantially complied with the notice of claim requirements in accord with this Court's recent announcements in *Reaves* and *Carr*. Under substantial compliance, a genuine issue of material fact is in dispute which justifies a reversal and a remand. That issue is whether Laurel actually received the letter Lattimore claims was mailed to the city. If so, Lattimore has possibly substantially complied with the MTCA.

¶11. The record contains two conflicting affidavits on this issue. First, in the response to the motion for summary judgment, Lattimore's counsel testified by affidavit that on February 6, 1995, he mailed a copy of his letter of representation by regular U.S. mail, postage prepaid, to the City of Laurel and Jeffrey Chandler advising them of his representation in this matter. Second, the Safety Director of Laurel, Alex Pope, testified by affidavit that he handles all such claims and that "[t]he City of Laurel did not receive any written notice from the Plaintiff, Lattimore , in this matter prior to filing suit as required under Section 11-46-11 (1) (2)."

¶12. Section 11-46-11(2) states, in pertinent part, that "[t]he notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail." Miss. Code Ann. § 11-46-11(2) (Supp. 1998). We assume Lattimore did not mail it by registered or certified mail because then someone would have the letter or a receipt as a signature is required. Moreover, Lattimore only claims it was mailed "postage prepaid, U.S. mail, addressed to the City of Laurel. . . ." The county court should determine whether Laurel actually received the letter as this is in dispute.

¶13. We note that no affidavit from the mayor or any other officials were received from Laurel. In *Reaves*, we stated as follows:

[T]he Act leaves the term "chief executive officer of the governmental entity" undefined. This language has proved overly broad and likely has created much hardship. In order to give reasonable meaning to the statute, we hold today that this term may be read to include any of the following: **president of the board, chairman of the board, any board member, or such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability**.

*Reaves*, 1999 WL ----- at ¶9; *Cf. Alexander v. Mississippi Gaming Comm'n.*, No. 98-CA-00295-SCT, 1999 WL 191856, at *3 (Miss. Apr. 8, 1999)(delivery of notice of claim to Chairman of the Gaming Commission constituted substantial compliance). The affidavit from the Safety Director has some ambiguity. It may be construed to say that no letter was received or that the letter which was received did not comply with the act. Additionally, it is not an affidavit from the chief executive officer of the city denying receipt. In these circumstances we deem it best that the factual issue whether the letter which is alleged to have been sent was in fact received by the City of Laurel and, if so, to whom was it directed.

¶14. We also note that the Legislature has very recently amended Section 11-46-11.[1] The amendments add legislative intent to this analysis. Under the new Section 11-46-11(1), it reads that "if the governmental entity is a municipality, then (service of the notice of claim) upon the city clerk (may be had)." Until these issues are developed, we cannot make a determination as to whether Lattimore substantially complied with the MTCA's notice of claim requirements.

## CONCLUSION

¶15. Recent case law has created a substantial compliance standard based on a case-by-case factual analysis. Under the substantial compliance standard, a genuine issue of material fact is in dispute justifying reversal. Therefore, we reverse the affirmance of summary judgment by the Jones County Circuit Court, and we remand this case for further proceedings consistent with this opinion.

¶16. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**


**McRAE, JUSTICE, SPECIALLY CONCURRING:**


¶17. This is another case regarding the sufficiency of compliance under the Mississippi Tort Claims Act. I agree to reverse and remand the case. I also agree that the defendants failed on summary judgment to show there was no genuine issue of material fact. However, I would further say that substantial compliance was met. The City of Laurel received actual notice due to the police investigation. A police report was filed. The § 11-46-11 and *Reaves v. Randall*, No. 97-CA-00982-SCT, 1999 WL 909578 (Miss. Dec. 31, 1998), notice standard was met. I would let this case continue under the substantial compliance standard of *Carr v. Town of Shubuta*, No. 96-CT-01266-SCT, 1999 WL 62772 (Miss. Feb. 11, 1999), for trial on the

merits of the negligence cause of action. There is evidence that there was adequate notice the date of the accident such that substantial compliance was realized.

¶18. Moments after the accident, the substantial compliance test was met when the **City of Laurel's own police department investigated the February 3, 1995, accident, which involved one of the city's own vehicles**. The police took similar action in *Carr*, where this Court found that the plaintiff had substantially complied. *See Carr*. Further, a mere three days after the accident, Lattimore's attorney sent a letter of representation to both the City of Laurel and firefighter Chandler informing them that he was representing the plaintiffs as to the instant action. The City obviously was on notice since, coupled with the letter making the claim, one of its agents, a police officer, conducted an investigation and filed a relative report regarding the accident. Even in his" affidavit," Alex Pope, the City of Laurel Safety Director, neither denied that the City or he received the representation letter nor that the City conducted the investigation. Further, the record contains no affidavit that the Mayor did not receive the letter, i.e., notice. The City had everything the statute requires. Further, there is nothing from Chandler as to what he did with his letter. If he turned his letter into the proper ones in authority then there is also substantial compliance. Usually a governmental entity does not have the opportunity to immediately investigate one of its accidents. Here, under its police powers, the City of Laurel was able to do whatever it desired to complete the investigation. Immediately after the accident, the City was on notice that one of its vehicles, the fire truck, was involved in an accident; within hours of the investigation, the City had information on the parties, injuries, and liabilities, as well as other information, through the police report. One must remember the only purpose of the statute is to give the governmental entity notice so that such entity has an opportunity to settle and make any correction so as to avoid reoccurrence of such a situation. By the actions of his attorney and the city's own police department investigation, Lattimore more than substantially complied with the statute.

¶19. Notice compliant with the statutory requirements was given. Key to this case are such requirements as: (1) the extent of the injury, (2) the names of all parties known to be involved, (3) the amount of money damages sought, and (4) the residence of the person making the claim at the time of the injury and at the time of the notice filing. Laurel Police Department Officer Roy Watson provided much of the necessary information in his February 3rd accident report, which was filed the day of the accident. The accident report discloses that the plaintiffs complained of pain, and it lists the involved parties and their addresses. Further, the report provides that liability fell to Chandler in that he contributed to the accident through his inattention. The police report is not a claim form but a means by which the City of Laurel may attain all requisite information to facilitate its investigation and determine whether it is liable. The importance of the police report is magnified by the fact that the investigator-a city employee-is a police officer who is trained to determine liability and report such, as well as indicate the amount of damages-both property and personal injury. While the amount of damages sought may not be explicit, the fact that the City investigated the accident and determined liability should have given the City a reasonable presumption of what damages existed and would be sought for recovery. Reading the police report together with the letter of Lattimore's attorney, the City must have been, or at least should have been, statutorily aware of the situation. Lest we forget the purpose of the notice statute is to provide the requisite information to evaluate the claim and perhaps make remedial changes. When the City is on actual notice as in this case, one wonders why such should not constitute substantial compliance.

¶20. Hence, it is obvious the City had actual notice. The investigation was conducted. Authorities within the City were aware of what happened. Such information should and did filter to the appropriate officials regardless of whether the City has appropriate internal notice procedures for claims evident through

investigations. If the City lacks such procedures, it should create them. The City is an artificial person. Thereby, as would be a natural person-a human being-the City is responsible for the memory of and relative behavior regarding its collective acts. At least constructive notice was evident, which in and of itself is a legal doctrine that implies substantial compliance to any statutory notice requirement.

¶21. *Reaves* states quite clearly that:

> **[T]he Act leaves the term "chief executive officer of the governmental entity" undefined.** This language has proved overly broad and likely has created much hardship. In order to give reasonable meaning to the statute, we **hold today that this term may be read to include any of the following: president of the board, chairman of the board, any board member, or** *such other person employed in an executive capacity by a board or commission who can be reasonably expected to notify the governmental entity of its potential liability.* The purpose of the Act is to insure that governmental boards, commissioners, and agencies are informed of claims against them. Such notice encourages entities to take corrective action as soon as possible when necessary; encourages pre-litigation settlement of claims; and encourages more responsibility by these agencies.

*[See id.](#)* (emphasis added). Unfortunately, today the majority does not further acknowledge the agency responsibility it recently encouraged in *Reaves*. In a sworn affidavit, Lattimore's counsel stated that he sent the aforementioned letter to the City of Laurel. Further, the City of Laurel Police Department conducted an investigation and filed a report. All of which implies notice to someone in an executive capacity as the City of Laurel is the executive umbrella controlled by the Mayor under which each department operates. Thereby, as per *Reaves*, the governmental entity was informed of and responsible for its potential liability. The governmental entity is the party *Reaves* tells us needs to be notified, and **IT, in this case the City of Laurel, HAS BEEN NOTIFIED**.

¶22. To solemnize the situation, one should take a cue from the Minnesota Supreme Court:

> It is undisputed by the parties that plaintiff did not comply with the express terms of the notice provision contained in Minn.St.1971, § 466.05. This, however, is not fatal to plaintiff's cause. If substantial compliance can be shown, the notice requirement of the statute will be satisfied. *Kelly v. City of Rochester*, 304 Minn. 328, 231 N.W.2d 275 (1975); *Jenkins v. Board of Education of Minneapolis Special School Dist. No. 1*, 303 Minn. 437, 228 N.W.2d 265 (1975); *Seifert v. City of Minneapolis*, 298 Minn. 35, 213 N.W.2d 605 (1973). This court recently held, in *Kelly v. City of Rochester*, *supra*, that a municipality's actual notice of a possible claim will constitute substantial compliance with the notice provision. As we stated there:

> " * * * actual notice on the part of the municipality or its responsible officials of sufficient facts to reasonably put the governing body of the municipality on notice of a possible claim will be in compliance with the notice requirements of Minn.St.1971, § 466.05, subd. 1. Our holding today does no more than follow the trend of our recent opinions in recognizing the arbitrariness of the notice provision and in an attempt to remedy this injustice, we declare that substantial compliance is accomplished by actual notice on the part of the municipality even if such knowledge is **acquired through its own procedures or personnel**." 304 Minn. 333, 231 N.W.2d 278.

*See Kossak v. Stalling*, 277 N.W.2d 30, 32-33 (Minn. 1979) (emphasis added).

¶23. There is no prejudice to the City as its executive received notice even before the attorney sent the letter regarding the accident. How could the City prove prejudice when it was strictly put on notice of the accident because it investigated through its police department? There is no prejudice because the City possesses all of the facts under its police power authority. Given that this Court's mandate of substantial compliance with the notice statute was satisfied, I would proceed with trial on the merits of the actual accident.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. H.B. 778, 1999 Miss. Laws Ch. __, effective upon approval by the Governor on March 25, 1999. The Legislature specifically states that the purpose of these amendments was to clarify the notice of claim requirements.