741 So.2d 965 (1999)
Mary Jane OVERSTREET, Appellant,
v.
GEORGE COUNTY SCHOOL DISTRICT, Appellee.
No. 97-CA-01456-COA.
Court of Appeals of Mississippi.
June 22, 1999.
*966 Mark W. Davis, Gulfport, Donald Jason Embry, Long Beach, Attorneys for Appellant.
Douglas Bagwell, Thomas Lynn Carpenter Jr., Gulfport, Attorneys for Appellee.
BEFORE KING, P.J., BRIDGES AND LEE, JJ.
BRIDGES, J., for the Court:
¶ 1. Mary Jane Overstreet appeals a judgment of the George County Circuit Court which granted George County School District's motion to dismiss on the grounds that Overstreet failed to comply with the notice requirements of the Mississippi Tort Claims Act. Finding that Overstreet substantially complied with the notice requirements, we reverse the circuit court's decision.

THE FACTS
¶ 2. On September 27, 1995, a George County school bus struck a vehicle driven by Mary Jane Overstreet. As a result of the collision, Overstreet injured her back and underwent back surgery. In her complaint, she also claimed damages for her suffering from chronic pain and depression. Overstreet dealt with the school district's insurance carrier and handled the matter of her property damage claim without the assistance of an attorney. However, in early January 1996, Overstreet employed the services of attorney Mark W. Davis for assistance with her remaining personal injury claim.
¶ 3. On June 6, 1996, Overstreet filed her complaint against George County School District. In response, the school district filed an answer and subsequently filed two amended answers. Though the school district had not raised the issue as a defense, on July 2, 1997, it filed a motion to dismiss Overstreet's complaint based on her failure to comply, strictly, with the requirements of notice under the Mississippi State Tort Claims Act. On August 28, 1997, the County filed an amended motion to dismiss.
¶ 4. According to Overstreet, on January 4, 1996, the following letter was forwarded via U.S. Mail, postage prepaid, to Shows, the superintendent of the George County School District:
Pursuant to Mississippi Code Annotated Section 11-46-11, notice is hereby given to you of the claim of Mary Jane Overstreet for damages and injuries incurred as a result of an accident involving a Geroge [sic] County school bus driven by your employee, Ms. Billie E. Tillie. I realize this matter has already been turned over to your insurance carrier, but Mississippi law requires that written notice of a claim against a governmental entity be given to the chief executive officer of the governmental entity.
By copy of this correspondence, I am providing the adjuster, Nancy Ostrowski, with a copy of same .... /s/ Mark W. Davis.
¶ 5. By affidavit, Mark W. Davis, Overstreet's attorney, and his legal assistant attested that such letter was in fact mailed to Shows via the United States Postal Service on or about January 4, 1996. Also by affidavit, Superintendent Shows attested that he received a copy of the January 4, 1996 letter via facsimile on July 2, 1997. Shows stated that to the best of his knowledge he had not seen or received the January 4, 1996 letter prior to July 1997.
¶ 6. In deposition testimony taken on September 15, 1997, Superintendent Shows of the George County School District *967 stated that he received notice of the accident the day it occurred. He also knew that Overstreet was making a property damage claim as well as a personal injury claim. He further stated that he knew that both claims would be handled by the school district's insurance carrier. Shows stated that by 9:00 a.m. on the day of the accident, the school district's insurance carrier was put on notice of the accident.
¶ 7. On the motion to dismiss, the trial court concluded that Overstreet failed to comply with the Mississippi Torts Claim Act because the notice was not delivered in person or by registered or certified U.S. mail and because the letter did not contain all of the information required by the Mississippi Tort Claims Act. The court went on to find that compliance with the notice provisions of section 11-46-11 of the Mississippi Code, as amended, was jurisdictional and therefore dismissed the complaint with prejudice. It is from this judgment that Overstreet appeals.

ISSUES
¶ 8. On appeal, Overstreet raises the following issues:
1. WHETHER THE TRIAL COURT ERRED IN DISMISSING OVERSTREET'S COMPLAINT FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE MISSISSIPPI TORT CLAIMS ACT?
2. WHERE AN APPELLANT HAS NOT REACHED MAXIMUM MEDICAL IMPROVEMENT, ARE THE PROVISIONS OF THE MISSISSIPPI TORT CLAIM ACT REQUIRING A MONETARY DEMAND WITHIN A PERIOD OF ONE YEAR FOLLOWING AN ACCIDENT UNCONSTITUTIONAL IN THAT IT DENIES THE RIGHT TO DUE PROCESS?

DISCUSSION

1. WHETHER THE TRIAL COURT ERRED IN DISMISSING OVERSTREET'S COMPLAINT FOR FAILURE TO COMPLY WITH THE REQUIREMENTS OF THE MISSISSIPPI TORT CLAIMS ACT?
¶ 9. The Mississippi Tort Claims Act provides that:
any person having a claim for injury ... against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity, ... The notice of claim ... shall be in writing, delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.
Miss.Code Ann. § 11-46-11 (Supp.1998). After this statute was enacted, the Mississippi Supreme Court adopted a strict compliance standard when evaluating whether a plaintiff had properly observed the notice provisions of the Mississippi Tort Claims Act. See City of Jackson v. Lumpkin, 697 So.2d 1179 (Miss.1997); Carpenter v. Dawson, 701 So.2d 806 (Miss.1997). However, in two recent cases, Reaves v. Randall, 729 So.2d 1237 (Miss.1998) and Carr v. Town of Shubuta, 733 So.2d 261 (Miss.1999), the Mississippi Supreme Court changed its posture on the issue of strict compliance with the notice requirements in section 11-46-11.
¶ 10. Reaves involved the injuries of a child hit by a truck owned by the Greewood Public School District. Reaves at (¶ 2). A little over a week after the accident, Reaves's attorney submitted a letter to the *968 Greewood Municipal Separate School System superintendent which read:
I have been retained by Rebecca Lou Rouse to represent her daughter, Ashley Renee Reaves, with regard to injuries and damages arising and growing out of a bicycle/motor vehicle accident which occurred on 2/18/96 at approximxately [approximately] 1:30 p.m. on the grounds of Davis School. It would be greatly appreciated if you would have your insurance carrier contact me regarding adjustment of this claim. /s/ Preston Davis Rideout, Jr.
Id. at (¶ 3). Ultimately, Reaves filed suit, discovery was conducted, but prior to trial, the circuit court granted summary judgment against Reaves on the issue of compliance with section 11-46-11. Id. at (¶ 1). On appeal, Reaves argued waiver by the school district because of their participation through their insurance adjuster and/or cooperation in pre-trial discovery. Id. at (¶ 5). The school district asserted that strict construction precluded any waiver of their defense. Id. The supreme court held:
When the simple requirements of the Act have been substantially complied with, jurisdiction will attach for the purposes of the Act ....we find that Reaves substantially complied with the notice provisions of the Act. Her notice letter, sent to Superintendent Stevenson, lists the persons involved in the accident, when the accident occurred, where the accident occurred, and what vehicles were involved.... In order to carry out the legislative purpose of providing relief to injured citizens, we hold that substantial compliance with the notice provision of the Act is sufficient.

Id. at (¶ 9-10) (emphasis added).
¶ 11. An undivided Mississippi Supreme Court in Carr re-affirmed the substantial compliance standard set forth by the majority in Reaves. Carr v. Town of Shubuta, 733 So.2d 261 (¶ 6) (Miss.1999). Agnes Carr sustained an injury when she slipped and fell on a public sidewalk in the Town of Shubuta. Carr at (¶ 2). A local police officer prepared an incident report and submitted the report to the city clerk. Id. Later, the city clerk provided to Carr a "Report of Public Liability" which she filled out and returned to the clerk. Id. The document contained all the information required by section 11-46-11 except for the amount of monetary damages which were unknown because she was undergoing treatment at that time. Id. The mayor of Shubuta was notified of the incident and the evidence showed that Carr updated the Town on her treatment for her injuries. Carr at(¶ 2). Additionally, "there were numerous contacts, oral and written between ... MMLP [the Town's insurer] ... and Carr and later Carr's counsel." Id. MMLP was "actively engaged in settlement negotiations." Id.
¶ 12. One year and ninety days after the accident, Carr filed a complaint against the Town of Shubuta asserting that the Town was negligent in inspecting and maintaining the sidewalk on which Carr fell. Carr at (¶ 3). In defense, the Town claimed that Carr failed to comply with the notice requirements of section 11-46-11. Id. at (¶ 4). The circuit court granted the Town's summary judgment motion on those grounds, and this Court affirmed the ruling based on previous decisions by the Mississippi Supreme Court that strict compliance with the notice of claim provision of section 11-46-11 was required. Id. at (¶¶ 4-5).
¶ 13. The supreme court accepted the appeal on writ of certiorari, and by a unanimous vote, expressly rejected the strict compliance standard embracing a substantial compliance standard as applied to the notice requirements of the Mississippi Tort Claims Act. Carr at (¶¶ 5-6). In its analysis, the court stated:
Even though this Court now finds substantial compliance to be sufficient, we stress that substantial compliance is not the same as, nor a substitute for, noncompliance. The determination of substantial compliance is a legal, though *969 fact-sensitive, question and is, therefore, necessarily decided on an ad hoc basis. In this case, Carr provided Shubuta with all of the required information except a liquidated amount of damages, although she stated the extent of her injuries in adequate detail. She was given the form by a city employee and assisted in completing the form. Furthermore, once her damages were ascertainable, the adjuster was made aware of same and actively pursued settlement with Carr and her attorney. It is not difficult to find in this case that Ms. Carr substantially complied with the notice of claim provisions of the act.
This case can be easily distinguished from City of Jackson v. Lumpkin, 697 So.2d 1179 (Miss.1997), where Lumpkin failed to submit any notice of claim other than copies of bills and invoices to a city employee; Holmes v. Defer, (3)27 [722 So.2d 624 (Miss.1998)] total failure to submit notice; and Carpenter v. Dawson, 701 So.2d 806 (Miss.1997), where a two-sentence letter was sent only to the city's insurance adjuster. These cases would fail even under substantial compliance standards. Carpenter, at 807-808. However, as stated previously, Lumpkin, Holmes, and Carpenter are hereby overruled to the extent the they require strict compliance rather than substantial compliance.

Carr at (¶¶ 14-16) (emphasis added). The supreme court has continued to follow a standard of substantial compliance as applied to cases involving the notice requirements of the Mississippi Tort Claims Act. See Alexander v. Mississippi Gaming Com'n, 735 So.2d 360 (Miss.1999); Lattimore v. City of Laurel, 735 So.2d 400 (Miss.1999); Ferrer v. Jackson County Bd. of Sup'rs, 741 So.2d 216 (Miss.1999).
¶ 14. In this case, the school district maintains that dismissal with prejudice was appropriate because the letter was not mailed via certified U.S. mail nor was it personally delivered and that there is no proof that Shows received the notice of claim. In addition, the school district contends that the trial court's decision was correct in that the letter was insufficient to meet the strict compliance requirements of the Act because: (1) it did not give a short and plain statement of the facts of forming the basis of the complaint, though the school district acknowledged that the letter states Overstreet's injuries; (2) the letter did not state where or when the accident occurred; (3) the letter did not state the extent of Overstreet's injuries, their location on her body, her symptoms or any medical problems; (4) the letter failed to provide the names of the persons involved; (5) the letter failed to give an amount of monetary damages sought; and (6) the letter failed to state Overstreet's residence.
¶ 15. In opposition, Overstreet argues that the chief executive officer (Shows) testified that he knew the accident had occurred, knew the identity of the parties involved, knew the date of the accident, knew the residence of the parties involved, and knew Overstreet had made a property and personal injury claim. She contends that her claim letter identified the parties, had the date of the accident, had a statement upon which the claim is based, and stated the circumstances which brought about the injury. Overstreet further maintains that at the time she forwarded the notice of claim letter, she had not reached maximum medical improvement and thus could not provide a monetary demand for compensation of her injuries. She further points out that the notice of claim letter was also forwarded to the school district's liability insurance carrier who had been involved in the matter and had previously settled the property damage portion of her claim. Overstreet contends that despite, the fact that her letter was not personally delivered or sent by registered or certified mail, the method of delivery has not prejudiced the school district because it was aware of her claims.
¶ 16. The standard now applied to the question of compliance with the notice *970 provisions of the Mississippi Tort Claims Act is substantial compliance rather that strict compliance. Regarding such standard, the Mississippi Supreme Court stated in Carr:
Many other jurisdictions having notice of claim requirements as a prerequisite to filing suit against the state or political subdivisions have adopted substantial compliance in some form. Most of those have determined that the purpose of such a notice requirement is to give the governmental entity an opportunity to investigate the claim and notifying the appropriate agencies or officials of dangerous conditions or inappropriate conduct to allow for corrective or remedial measures, as well as to permit or encourage amicable settlement with the citizenry and/or prepare a defense to the claim. Felder v. Casey, 487 U.S. 131, 142-43, 108 S.Ct. 2302, 2309, 101 L.Ed.2d 123, 140-41 (1988); Blohm v. Emmet County Bd. of County Road Comm., 223 Mich.App. 383, 565 N.W.2d 924, 926 (Mich.Ct.App.1997); Collier v. Prater, 544 N.E.2d 497, 498 (Ind.1989); Fritsch v. St. Croix Central School Dist., 183 Wis.2d 336, 515 N.W.2d 328, 331 (Wis.Ct.App.1994).
Carr at (¶ 8). The supreme court further expressed in Carr that the notice requirements of section 11-46-11 "should not act as a barrier allowing the state [or governmental entity] to defeat totally the purpose of the act itself." Id. at (¶ 9). The court continued:
Admittedly, the act is intended to limit the government's liability for tortious conduct, just as the Worker's [sic] Compensation Act was intended to limit the exposure of Mississippi employers, but it is also intended to allow for the orderly administration of legitimate claims against governments for such tortious conduct, and like the workers' compensation act, serves as an exclusive remedy for such claims. As the Indiana Supreme Court stated in Collier, ...
The purpose of the notice statute being to advise the city of the accident so that it may promptly investigate the surrounding circumstances, we see no need to endorse a policy which renders the statute a trap for the unwary where such purpose has in fact been satisfied. Thus, a notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it. Collier, 544 N.E.2d at 498-99 (emphasis in original, citations omitted & quoting Galbreath v. City of Indianapolis, 253 Ind. 472, 255 N.E.2d 225, 229 (1970)).
Id. Even though Shows stated that he had not seen the notice of claim letter until July of 1997, he had knowledge of Overstreet's personal and property claims. In response to the school district's motion to dismiss, Overstreet produced evidence of her on going communications and negotiations with Corgegis Insurance Carriers, George County School District's insurance carrier. Shows knew that Overstreet had made a property damage claim for the damages to her vehicle and was aware that there was a question as to her personal injury claims. Even further, Shows was aware of the Overstreet's vehicle accident almost immediately following the collision. Such notice gave Shows as chief executive officer, the opportunity to investigate the matter promptly. The school district was not prejudiced by Overstreet's failure to send her letter in the manner prescribed by statute because, as Shows recognized, he was aware of Overstreet's claims and *971 the matter was already in the hands of the insurance company.
¶ 17. Next, the school district's assertion that the letter submitted by Overstreet failed to provide all of the information as required by section 11-46-11 fails under a substantial compliance review. The letter provided the identities of the parties, the date of the accident, a short statement upon which the claim is based, and a description of the circumstances which brought about the injury. At the time the letter was written, Overstreet was continuing to receive medical care for her injuries and an exact amount of her claims for medical expenses could not be calculated.
¶ 18. In conclusion, we rule that Overstreet's notice substantially complied with the Mississippi Tort Claims Act's notice requirements and reverse the trial court's dismissal of Overstreet's complaint.

2. WHERE AN APPELLANT HAS NOT REACHED MAXIMUM MEDICAL IMPROVEMENT ARE THE PROVISIONS OF THE MISSISSIPPI TORT CLAIM ACT REQUIRING A MONETARY DEMAND WITHIN A PERIOD OF ONE YEAR FOLLOWING AN ACCIDENT UNCONSTITUTIONAL IN THAT IT DENIES THE RIGHT TO DUE PROCESS?
¶ 19. The Mississippi Supreme Court has upheld the constitutionality of the Mississippi Tort Claims Act in Mohundro v. Alcorn County, 675 So.2d 848, 852 (Miss.1996) and more recently in Barnes v. Singing River Hosp. Sys., 733 So.2d 199 (Miss.1999). In Mohundro, the appellant argued that the Act violated their due process rights. "A due process violation requires that the party be deprived of a protected property interest." Mohundro, 675 So.2d at 852 (citing Tucker v. Hinds County, 558 So.2d 869, 873 (Miss.1990)). A plaintiff has no property interest in the right to sue a governmental entity. Mohundro, 675 So.2d at 852. Such an interest can only be granted by the legislature, but in this state, "[t]he legislature has continued to withhold such a right." Id. Because Overstreet has no constitutionally protected interest in suing a governmental entity, this assignment of error is without merit.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF GEORGE COUNTY DISMISSING APPELLANT'S COMPLAINT IS REVERSED AND REMANDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING P.J., DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.
SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY McMILLIN, C.J. AND COLEMAN, J.
SOUTHWICK, P.J., concurring.
¶ 21. This case requires that we interpret the newly created doctrine of "substantial compliance" to the statutory requirement that notice be given to a public entity prior to a tort suit.
¶ 22. My first concern is that the 1999 Mississippi Legislature re-enacted the notice statute, creating optional recipients for the notice, but arguably strengthening or at least not softening the language regarding what has to be contained in the notice.
¶ 23. Secondly, even if "substantial compliance" remains good law after the amendment there must be some benchmark against which we may judge whether compliance is substantial. Otherwise we may be starting down a path that has the potential for arbitrary results.
¶ 24. The supreme court's announcement that it would no longer apply the language of the notice statute literally was made on February 11, 1999. Carr v. Town of Shubuta, 733 So.2d 261 (Miss.1999). The Legislature was acting contemporaneously. On February 4, 1999 the House passed its version of an amended notice statute. On March 4 an amended bill in which the House later concurred was adopted by the *972 Senate. The enrolled bill was signed on March 19 by the presiding officers; the Governor signed on March 25. Mississippi Legislature Internet homepage, Bill History, HB 778. I do not presume that the other two branches of government were at that fairly early stage aware of the supreme court's ruling in Town of Shubuta. The bill was introduced on January 8, well before the supreme court's opinion and in a form no different in approach than that which was finally adopted. It should not be assumed then that what propelled the bill along included a desire to accept or respond to Town of Shubuta.
¶ 25. There is a doctrine which aids statutory construction but is not controlling, that when the legislature re-enacts language previously interpreted by the supreme court it is presumably adopted the court's interpretation. E.g., Smith v. Jackson Construction Co., 607 So.2d 1119, 1130-31 (Miss.1992) (Robertson, J., concurring). Applying that doctrine is especially treacherous here as the interpretation of the notice requirement that was being legislatively confirmed could be seen as the pre-Shubuta holdings that had consistently upheld a strict reading. The court's abrupt change in direction was announced mid-way through the progress of the bill and may not have affected it.
¶ 26. The principal change in the notice requirement was to permit the notice to be sent to individuals other than the chief executive:
If the governmental entity is a county, then upon the chancery clerk of the county sued; if the governmental entity is a municipality, then upon the city clerk. If the governmental entity to be sued is a state entity as defined in Section 11-46-1(j), service of notice of claim shall be had only upon that entity's chief executive officer.
1999 Miss. Laws, HB 778 as adopted. My prior reference to a potential "strengthening" of the requirement of strict compliance is based on the added underlined words: "Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail." Id., amending Miss.Code Ann. § 11-46-11(2) (Supp.1998). Instead of "every" notice, the statute previously had stated that "the" notice was to be in writing. The "and shall be" phrase was just an insertion, perhaps for grammatical clarity.
¶ 27. Finally, the statute has changed the time deadlines. The 95 day tolling of the limitation period applies if a state agency has received the notice, but the tolling lasts for 120 days if the proper official for a local governmental body is that recipient. The new statute now also provides that once "the tolling period has expired, the claimant shall then have an additional ninety (90) days to file any action against the governmental entity served with proper claim notice." If a denial of claim is served by the governmental entity on the claimant "by certified mail, return receipt requested," the additional ninety days during which the claimant may file an action begins to run on the date of receipt. 1999 Miss. Laws, HB 778 as adopted.
¶ 28. The caption to the bill, which also is an aid to the legislature's meaning, only stated that it was an "act to amend section 11-46-11, Mississippi Code of 1972, to clarify notice of claim requirements under the Tort Claims Act; and for related purposes."
¶ 29. It would appear from all this that the legislature was satisfied to amend the statute only in these ways. Nothing in Town of Shubuta held that the former strict construction denied constitutional rights, or that the statute as written was an improper intrusion on the prerogatives of courts to control procedural matters, or otherwise was beyond the authority of the legislature. Instead, the stated reasoning for "substantial compliance" was that the purpose of the notice statute is "to give the governmental entity an opportunity to investigate *973 the claim and notifying the appropriate agencies or officials of dangerous conditions or inappropriate conduct to allow for corrective or remedial measures, as well as to permit or encourage amicable settlement with the citizenry and/or prepare a defense to the claim." Town of Shubuta, at (¶ 8). Once the purpose is served, the procedures should not be "a barrier allowing the state to defeat totally the purpose of the act itself." Id. at (¶ 9).
¶ 30. Whatever the source of the authority used in Town of Shubuta to subordinate the precise language of the statute, presumably those reasons remain after the 1999 amendments. The Mississippi Tort Claims Act notice provision has always appeared somewhat arbitrary in its strictures. It is similar to such federal legislation as the Federal Torts Claims Act but without the procedural reason for the rule. 28 U.S.C.S. 2675 (Rev.1990). Under the federal act a claimant gives notice in order to commence a mandatory administrative claims procedure. Id. Only if that process fails to satisfy the claimant would a civil action be permitted. Even though state and local governmental bodies do not have the formal administrative claims procedures, usually efforts to resolve a dispute are pursued. The most that can be said about notice to a state governmental body is that it allows the potential defendant and possibly an insurance carrier to make a final effort to settle a claim prior to suit being filed.
¶ 31. Regardless of other policy issues, the initial interpretation of this statute by the supreme court did provide clarity to whether a litigant had complied with notice rules. There was no right to sue unless within 90 days prior to a suit, the plaintiff 1) sent by registered or certified mail, or delivered in person 2) to the chief executive of the governmental entity 3) a written notice that contains 4) plain statements of the circumstances of the claim, 5) the extent of the injury, 6) time and place of injury, 7) names of all persons known to be involved, 8) amount of money sought in damages, and 9) the residence of the claimant both at the time of injury and at the time of notice. Miss.Code Ann. § 11-46-11 (Supp.1998). That is quite a list, but the supreme court until recently declared that every element of it must exist. E.g., City of Jackson v. Lumpkin, 697 So.2d 1179, 1181 (Miss.1997), overruled in part, Carr v. Town of Shubuta, 733 So.2d 261 (Miss.1999).
¶ 32. The clearest statement about the new doctrine of "substantial compliance" comes from an Indiana case quoted in Town of Shubuta. If notice is timely filed, "informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to promptly investigate the claim satisfies the purpose of the statute and will be held substantially to comply with it." Collier v. Prater, 544 N.E.2d 497, 499 (Ind.1989), quoted in Town of Shubuta at (¶ 9). By quoting Collier, the supreme court was accepting the Indiana Supreme Court's view that quite clear violations of provisions of the notice statute will not bar suit if the purpose of the statute is satisfied. The statute can, as I have done above, be broken into nine requirements. Each now must be analyzed for whether in a particular case that item is necessary to satisfy the statute's purpose or should be viewed as meaningfully attenuated from that purpose.
¶ 33. The first requirement, that the notice be sent by registered or certified mail, or delivered in person, is probably intended to avoid the very problem at the center of the dispute here. Under the statutory language no credibility choice ever has to be made between competing claims regarding sending the notice of "yes it was" and "no it was not." Instead the statute provides rather limited but easily made and proven means of giving notice. However, the requirement of a special form of delivery has recently been declared not to be part of substantial compliance. Lattimore v. City of Laurel, 735 So.2d 400 (¶ 9-10) *974 (Miss.1999). In Lattimore the notice was allegedly sent by regular mail, and the City responded that it never received it. The suit could proceed if a fact-finder determines that the notice was timely sent and properly received. Id.
¶ 34. The Legislature's re-enactment of the language did include some rather strong language that "Every notice of claim required by subsection (1) of this section shall be in writing, and shall be delivered in person or by registered or certified United States mail." Miss.Code Ann. § 11-46-11(2), as amended 1999 Miss. Laws (emphasis added). To make this provision a threshold for substantial compliance would be logical. Giving notice in writing and making certain that it is delivered are so fundamental that allowing litigants to weave in and around that requirement creates tremendous fact questions on which all the rest of the compliance teeters. Nonetheless, unless the supreme court changes its conclusion in Lattimore based on the 1999 statutory amendments, I would apply the supreme court's conclusion that return receipt mail is just an option.
¶ 35. The second requirement is that the chief executive of the governmental entity be the person given the notice. The seminal case for adequate compliance, the Indiana opinion in Collier, stated that notice could be sent to the wrong official. How wrong may remain a matter of fact-sensitivity, as the governmental entity must reasonably be in a position to respond. Interestingly, the 1999 amendments broadened the category of recipients even under strict compliance.
¶ 36. That the notice be in writing might still be a requirement. However, if the governmental entity knew everything that should have been in writing, and indeed took steps to investigate and in writing denied the claim, would that still be found insubstantial compliance? Does the claimant even have to transmit notice, or if the governmental body investigated an accident involving their property or personnel, would the claimant ever have to send anything? The supreme court in Town of Shubuta did require that the claimant at some stage and in some form make a demand. Mere knowledge by the government of an incident and the potential that a private person could bring suit about it, does not constitute notice that a claim will be pursued. I would hold that there has to be a writing.
¶ 37. The detail of the content of the written statement would also appear of little importance. The circumstances of the claim, the extent of the injury, the time and place of injury, and the names of all persons known to be involved, would likely all become known after notice to a governmental entity that provides an "opportunity to promptly investigate the claim," which is the minimum that the Town of Shubuta court required. Apparently, any individual item or even most all the information could be omitted if the governmental official received enough to permit a thorough investigation. It is true that Town of Shubuta found that certain precedents resolved under the former strict compliance rules would still not satisfy the substantial compliance rules. Town of Shubuta, at (¶ 16). Among them was the sending of bills to the insurance carrier, the absence of any notice, and a "two-sentence letter." Id. However, if the focus is on what permits a governmental body to start a reasonable investigation, rather sparse notice could do that. Indeed, few claims adjustors likely need anywhere near the detail of the statutory description of notice before they can with relative ease determine the claimant, events and witnesses. Thus my interpretation is that no specific detail is needed.
¶ 38. The failure to notify a governmental body of the amount of money sought in damages was specifically what was disregarded in Town of Shubuta. The reason, that the claimant did not yet know her damages, might be important. It was the reason that no dollar demand was made in this case. If all that is being required is *975 that the government be told enough to investigate and to know that the claimant has a claim, one wonders if the amount of damages is ever important.
¶ 39. Finally, the residence of the claimant both at the time of injury and at the time of notice was a requirement of the statute. Almost certainly that is now irrelevant except in the most unusual circumstances.
¶ 40. Having left the rather unsatisfactory extreme of strict compliance, it is in my view important that we avoid different potential inequities. The language of the statute is no longer significant, and in fact many problems under the notice statute arose because litigants did not appear to know of it. Now there needs to be some rather clear judicial guidance on what constitutes sufficiency. To prevent suits from being tried after motions to dismiss based on inadequate notice are denied, then discovering on appeal that the notice in fact was insubstantial, a new notice rule should be announced. It cannot cover all situations since variations of facts are too difficult to predict.
¶ 41. Without suggesting a precise rule, I note that in the present state of the law the purpose of the notice requirement is to assure that prior to being made a party-defendant on a tort claim, a Mississippi governmental body has a reasonable opportunity to investigate the claim. No particular form or means of delivery of the notice is required. The minimum requirements are that sufficient information be received so that the governmental body may without undue difficulty investigate the matter, and that before one year from the incident that the claimant in some form make a demand. A useful addition to what has been clearly held so far is that the notice be in writing, and especially after the 1999 amendments, the supreme court might reconsider the need that the notice be sent by mail with a return receipt, or delivered in person.
¶ 42. Since the notice issue in this case is whether notice was ever sent and the effect of no specific monetary demand, I agree in the present state of the law that we must reverse and remand.
¶ 43. McMILLIN, C.J. AND COLEMAN, J., JOIN THIS SEPARATE OPINION.